UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>STONEY END OF HORN,<br><br>Defendant. | 1:13-CR-10037-CBK<br><br>ORDER REGARDING MOTION FOR<br>REDUCTION OF SENTENCE |

Defendant moved for a reduction of sentence under 18 U.S.C. § 3582(c)(2) based upon Part A of Amendment 821 of the Federal Sentencing Guidelines, which became effective November 1, 2023. Defendant was sentenced on May 15, 2015, to 293 months imprisonment each for four counts of sexual abuse of a minor, to run concurrently. On that same date defendant was sentenced to 120 months imprisonment for assault resulting in serious bodily injury in 1:13-cr-10062-CBK, to run concurrently to the sentences in 1:13-cr-10037-CBK. The cases were consolidated for trial and sentencing.

Defendant's total offense level was 33 and, together with a criminal history category of IV, his guideline range was 188 – 235 months. This Court found that the defendant's criminal history category substantially underrepresented the seriousness of the defendant's criminal history and the likelihood he would commit other crimes and imposed an upward departure pursuant to USSG 4A1.3 to criminal history category VI. The guideline range increased to 235 – 293 months. In addition, this Court found that upward departures for death of a victim pursuant to § 5K2.1, exceedingly cruel and heinous conduct pursuant to § 5K2.8, and dismissed conduct pursuant to § 5K2.21 were appropriate in this case (the Court set aside a murder conviction on a legal technicality).

Part A of Amendment 821 amended, retroactively the "status points" provisions of U.S.S.G. § 4A1.1. Formerly, two criminal history points were assigned pursuant to

§ 4A1.1(d) if the defendant committed the offense while defendant was under any criminal justice sentence. The amendment reduced the number of status points to one and, pursuant to § 4A1.1(e), only applies if the defendant has seven or more criminal history points before application of status points. Defendant's criminal history score was 6. He was assigned two status points, resulting in a criminal history score of 8. The addition of two status points increased his criminal history category from III to IV.

The United States Supreme Court has instructed that sentence reductions pursuant to § 3582(c) and § 1B1.10 require a two-step inquiry. Dillon v. United States, 560 U.S. 817, 826, 130 S.Ct. 2683, 2691, 177 L.Ed.2d 271 (2010). "A court must first determine that a reduction is consistent with § 1B1.10 before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)." *Id.*

I find that defendant is eligible for application of Amendment 821. Application of Amendment 821 Part A would reduce his status points from two to zero, resulting in a total criminal history score of six and a criminal history category of III. The resulting guideline range would be 168 - 210 months. The original criminal history upward departure from category IV to category VI was, numerically, a two level increase in criminal history category. Defendant contends that this Court should likewise upwardly depart two levels from category III to category IV, resulting in a guideline range of 210 – 262 months. Since the sentence imposed was at the top of the original guideline range, defendant requests a reduced sentence to 262 months.

Notwithstanding whether defendant qualifies for a reduction in sentence, pursuant to 18 U.S.C. § 3582(c)(2), any reduction in sentence must be "consistent with the applicable policy statements issued by the Sentencing Commission. The Sentencing Commission instructed in the Application Notes to § 1B1.10 that, in determining whether a reduction is warranted and, if so, the extent of the reduction, the Court shall consider, *inter alia*:

> In General.—Consistent with 18 U.S.C. § 3582(c)(2), the court shall consider the factors set forth in 18 U.S.C. § 3553(a) in determining:

(I) whether a reduction in the defendant's term of imprisonment is warranted; and (II) the extent of such reduction, but only within the limits described in subsection (b) [the amended guideline range].

USSG § 1B1.10, Application Note 1(B)(i). The factors set forth in 18 U.S.C. § 3553(a) are:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the kinds of sentence and the sentencing range established [by the Sentencing Guidelines] . . .

(5)    any pertinent policy statement . . .

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims of the offense.

At the sentencing hearing I made the following findings:

The Defendant was convicted by the jury of four counts of sexual abuse of a minor and of assault resulting in serious bodily injury. I'm looking at the verdict form here. Oh, yes. And they also -- they also convicted him, of course, of second-degree murder, and, as I said, of assault resulting in serious bodily injury, as charged in the Indictment. And, of course, as the record reflects, I set aside the murder conviction, based upon a decision by the United States Supreme Court, a rather ancient case. I think it's 1895 that case was decided . . . but I have to apply the law as -- as decided by the United States Supreme Court, whether I agree with it or not.

\* \* \*

The medical evidence was conclusive that this vicious assault that the Defendant perpetrated was the cause of her death. There was nothing to dispute that. And so there clearly was sufficient evidence to convict him of murder, but it was a technicality, and I can't -- I cannot sentence him on that, as such; however, we know that, under the rules as they now exist, the Court can take into consideration even counts as to which the jury has found the Defendant not guilty.

\* \* \*

3

Now, the Government has filed a motion for an upward departure; and, frankly, I think that an upward departure is warranted. I think his Criminal History Category of IV does not adequately represent his actual criminal history or the likelihood that he will commit further crimes. He was sexually assaulting these children in Mobridge, which would be under state jurisdiction and not federal. And I find also that he murdered the victim. And he repeatedly sexually abused these children, each of which would have been a federal crime -- would have been -- was a federal crime.

\* \* \*

[After setting forth the defendant's criminal history] I think his Criminal History Category should be a VI, at least. And that's what I'm going to do, by way of an upward departure, in that regard.

\* \* \*

The present guideline range, without the departure, would call for a sentence of 15.666 years, and I think that's an inadequate sentence under all of the circumstances of this case. I have no doubt that he was sexually abusing these girls for a long period of time.

The prosecutor reminded the Court that the defendant sexually abused only one of the girls – the victim Offered herself . . . to protect her younger sister."

And he did this while the woman that he had so seriously injured and later died was unable to protect her children from him.

\* \* \*

There was evidence at trial, I believe, that the Defendant told the victim of the sexual assault that she would be, quote, "up shit creek," end quote, if she told anybody about the assault. And, of course, that's a threat, and that constitutes obstruction of justice. And I think that he intended that -- to thwart any investigation of this matter by these threats. The victim testified that she did not yell or scream to alert others in the house during the incidents of abuse because there were threats that were made. She also testified that there was physical abuse, and she also testified that the Defendant said that her mom would get what's coming to her, and she was afraid.

\* \* \*

And so the question comes down, then: What is the appropriate upward departure? I find that the conduct of the Defendant as to the decedent was extreme. It was unusually heinous, cruel, and brutal, and degrading to the victim, and that she suffered extensive facial injuries and required several surgeries to attempt to repair that damage which he inflicted upon her; and she suffered prolonged pain and seizures as a result of all of this. And so an upward departure is appropriate under 5K2.8.

4

An upward departure is appropriate for dismissed and uncharged conduct under 5K2.21. I've already mentioned the abuse, which occurred in Mobridge, before the victim was 12. If that had happened within Indian country, the offense level would have been increased to a 44, with a guideline range of life.

Additionally, four charges were dismissed to streamline the trial. Each of those dismissed counts could have resulted in a mandatory-minimum sentence of ten years, to be imposed consecutively to any sentence received for the underlying sexual abuse conviction.

And the Government cites to 18 United States Code § 1512(b)(3) which holds, quote, "Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a federal offense shall be fined under this title or imprisoned not more than 20 years, or both." The Defendant, as I said, did threaten the victim with a sexual assault to prevent her from telling anyone about the assaults.

Based upon the facts educed at trial, the facts set forth in the presentence report, and the facts I recited on the record at sentencing, all matters I am required to take into account pursuant to 18 U.S.C. § 3553(a), I find that the defendant's motion for reduction in sentence should be denied. Defendant's criminal history departure increased his category two levels to a category VI, the highest category available. I stated at sentencing that "I think his Criminal History Category should be a VI, at least." Criminal history category V does not adequately account for the defendant's conduct in this case. He severely assaulted his on again/off again paramour. As the United States Court of Appeals for the Eighth Circuit recited in denying defendant's direct appeal:

Brave Crow suffered a serious fracture, known as a LeFort III fracture, in the bones of her face. She sustained broken bones in her upper jaw and face, facial swelling and bruising on the left side of her face, and bruising under both eyes. Brave Crow was "very, very quiet" when interviewed, and she did not identify her assailant when hospitalized. Brave Crow's injuries required multiple surgeries. Her health deteriorated, and she eventually died on June 25, 2010, as a result of complications from injuries caused by the assault.

The evidence concerning sexual abuse centered on the testimony of S.N.H., a relative of Brave Crow and a twelve-year-old minor during the relevant period. S.N.H. lived with End of Horn and Brave Crow in McLaughlin, South Dakota. She testified about an incident that occurred when Brave Crow was in the hospital for a stroke in February 2010. According to S.N.H., she woke up to discover End of Horn rubbing her vagina. End of Horn then pulled up her shirt and bra and licked her nipples before inserting his penis into her vagina.

S.N.H. also testified that End of Horn engaged in vaginal intercourse with her once a month from April through July 2010 while they were staying at the house of End of Horn's father in Wakpala. The sexual contact eventually ended. S.N.H. later reported the sexual abuse in a questionnaire that she filled out at a youth treatment facility.

United States v. Stoney End of Horn, 829 F.3d 681, 684 (8th Cir. 2016). One of the incidents described above which occurred in 2010 took place while Brave Crow, the victim of the assault, was in the hospital in a coma. The sexual assault victim and the defendant were visiting Brave Crow. He continued to sexually abuse her even in the parking lot of the hospital.

Whether or not the defendant's criminal history category is calculated at category III or IV, the appropriate criminal history category is category VI. The lowest sentence which was and is just in this case is 293 months imprisonment.

Now, therefore,

IT IS ORDERED that the motion for reduction of sentence, Doc. 174, is denied.

DATED this 4th day of August, 2026.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

6